United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIS DAVIS, K70724,

Plaintiff,

v.

CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION,

Defendant(s).

Case No. 23-cv-05999-CRB  (PR)

**ORDER GRANTING DEFENDANT
CALIFORNIA DEPARTMENT OF
CORRECTIONS AND
REHABILITATION'S MOTION FOR
SUMMARY JUDGMENT**

(ECF No. 26)

Plaintiff Willis Davis, a state prisoner at the Correctional Training Facility (CTF) in Soledad, California, filed a pro se First Amended Complaint (FAC) seeking injunctive and monetary relief from Defendant California Department of Corrections and Rehabilitation (CDCR) for alleged violation of Title II of the American with Disabilities Act of 1990 (ADA).  Davis alleges that CDCR's refusal to issue him a permanent lower bunk assignment to accommodate his scoliosis and knee and ankle impairments amounts to discrimination based on his disability in violation of Title II of the ADA.  The court screened the FAC pursuant to 28 U.S.C. § 1915A and found that Davis's allegations appear to state a cognizable claim under Title II of the ADA, when liberally construed, and ordered the FAC served on CDCR.

Currently before the court for decision is CDCR's motion for summary judgment on Davis's claim for injunctive and monetary relief under Title II of the ADA, to which Davis filed an opposition and CDCR filed a reply.  For the reasons that follow, the motion will be granted.

**BACKGROUND**

The following facts are undisputed unless otherwise noted:

Davis has multiple medical conditions and impairments, including scoliosis and knee and ankle impairments, which he alleges limit his ability to climb up to the upper bunk bed in his cell.

FAC (ECF No. 15) ¶¶ 3–6.  Davis claims CDCR unlawfully denied his reasonable accommodation request for his disability by refusing to issue him a permanent bottom bunk assignment.  Id. ¶ 10.

CDCR provides medically necessary accommodations to prisoners through a reasonable accommodations process.  Gonzalez Decl. (ECF No. 26-8) ¶ 2.  A prisoner may request a disability related accommodation by submitting a CDCR 1824, Reasonable Accommodation Request, which is reviewed by the institution's Reasonable Accommodation Panel (RAP).  Id. ¶ 3.  When reviewing a request, the RAP considers information relevant to the prisoner's medical needs and their request for accommodation, which may include their medical records, grievance records, observations from custody staff, and interviews with the prisoner regarding the request.  Id.  The RAP will discuss the request, as well as any relevant information gathered from their investigation, and respond to the prisoner's request.  Id.

A prisoner's primary care provider (PCP) determines whether the requested accommodation is necessary.  Balbona Decl. (ECF No. 26-6) ¶ 3.  PCPs evaluate medical necessity according to CDCR's Comprehensive Accommodation Formulary Guidelines.  Id. ¶ 4.  The PCP references the formulary to determine whether the patient meets the medical indications for the accommodation.  Id.  The PCP may also request a non-formulary accommodation when the individual does not have a condition identified in the formulary, but the accommodation is still appropriate.  Id.

In early 2021, Davis submitted a Reasonable Accommodation Request for a permanent bottom bunk assignment.  FAC ¶ 7.  On February 1, 2021, CDCR assigned the request to its Institution Appeals Coordinator to assess Davis's need for an interim accommodation and to obtain other preliminary information regarding the request.  Gonzalez Decl. ¶ 6 & Ex. A.  The Institution Appeals Coordinator interviewed Davis and an officer assigned to Davis's housing unit.  Id. Ex. A.  The officer reported no observable issues with Davis's access to his assigned upper bunk.  Id.  As an interim accommodation, Davis moved to a lower bunk pending the outcome of his reasonable accommodation request.  Id.; FAC ¶ 9.

On February 4, 2021, Davis met Dr. Chen for an evaluation for a permanent bottom bunk accommodation.  Balbona Decl. ¶ 6 & Ex. B.  Dr. Chen noted that Davis's PCP, Dr. Balbona, was

United States District Court
Northern District of California

out that day but could address Davis's request at Davis's upcoming appointment with Dr. Balbona.  Id.  In the meantime, Dr. Chen issued Davis a temporary bottom bunk accommodation for one month.  Id.

On February 17, 2021, Dr. Balbona met with Davis to evaluate Davis's need for a permanent bottom bunk accommodation.  Id. ¶ 5 & Ex. B.  After examining Davis and noting that Davis had no weakness, sensory deficit, walked with normal gait, and exhibited full range of motion, Dr. Balbona concluded that Davis did not meet the CDCR formulary criteria for a permanent bottom bunk accommodation.  Id.

On February 18, 2021, the RAP discussed Davis's reasonable accommodation request and, after reviewing the information gathered from the investigation, denied it.  Gozalez Decl. ¶ 6 & Ex. A.  The RAP specifically considered Dr. Balbona's evaluation of Davis in connection with the request, observations from staff in Davis's housing unit, statements by Davis, and statements from an education staff member verifying Davis's law library access.  Id. [1]

On July 22, 2021, Dr. Balbona met with Davis for a follow-up primary care appointment. During the visit, Davis expressed his concern about getting a permanent bottom bunk assignment. Balbona Decl. ¶ 8 & Ex. D.  Dr. Balbona performed a physical examination on Davis and noted he had no weakness in his legs that caused him to stumble or have trouble getting up from his chair, no loss or altered sensations in his lower extremities, no bladder or bowel dysfunction, retention, or incontinence, no swelling in his ankles, and no limitations in range of motion.  Id.  Dr. Balbona advised Davis that he did not meet the criteria for a permanent bottom bunk accommodation.  Id.[2]

On September 1, 2021, Dr. Balbona met with Davis for another primary care appointment, in which Davis again expressed his concerns with getting a permanent bottom bunk assignment.

---

[1] In January 2021, Davis also submitted a health care grievance concerning his request for a permanent bottom bunk accommodation.  It was denied at the final level of review on grounds that no intervention was warranted because Davis did not meet the medical necessity criteria for a permanent bottom bunk accommodation based on Dr. Balbona's February 17, 2021, evaluation.

[2] In February 2021, Davis filed a second health care grievance concerning his request for a permanent bottom bunk accommodation.  It was denied at the final level of review on grounds that no intervention was warranted because Davis did not meet the medical necessity criteria for a permanent bottom bunk accommodation based on Dr. Balbona's July 22, 2021, evaluation.

Id. ¶ 9 & Ex. E.  Dr. Balbona again performed a physical examination on Davis and noted he had good upper body muscle bulk, no weakness, sensory deficit, or limitations in range of motion.  Id. Dr. Balbona also spoke with Correctional Officer Solis, a custody officer from Davis's housing unit.  Id.  According to Solis, Davis did not appear to have difficulty performing any activities of daily living, and he had seen Davis perform push-ups and pull-ups in his cell.  Id.  Dr. Balbona again advised Davis that he did not qualify for a permanent bottom bunk accommodation.  Id.

On November 22, 2022, Dr. Balbona met with Davis for ongoing complaints of back and knee pain.  Id. ¶ 10 &  Ex. F.  Although Davis still did not meet the formulary criteria for a permanent bottom bunk accommodation, Dr. Balbona issued Davis a non-formulary permanent bottom bunk accommodation based on his scoliosis and bone disease diagnoses.  Id.  Davis's permanent bottom bunk accommodation/chrono has not been modified or discontinued.  Id ¶ 10.

Since February 4, 2021, when Dr. Chen issued Davis a temporary bottom bunk accommodation, Davis has been continuously assigned to a bottom bunk except for ten or so days in August 2021.  See Barss Decl. (ECF No. 26-4) Ex. A.  Davis has not had to sleep on a top bunk since.  See Park Decl. Ex. A (ECF No. 26-3) (Pl.'s Apr. 16, 2025, Depo.) at 40:16-22.

<strong>DISCUSSION</strong>

A.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the

United States District Court
Northern District of California

opposing party will have the burden of proof at trial, [as is the case here,] the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249-50.

B.      Analysis

CDCR moves for summary judgment on Davis's claim for injunctive and monetary relief under Title II of the ADA on several grounds. The motion will be granted because: (1) Davis already has received the permanent lower bunk accommodation he seeks and therefore his request for injunctive relief under Title II of the ADA is moot, and (2) Davis has not shown that CDCR intentionally discriminated against him by being deliberately indifferent to Davis's need for an accommodation and therefore is not entitled to monetary relief under Title II of the ADA.

1.      Injunctive Relief

It is well established that requests for injunctive relief are moot if there is no "present harm left to enjoin." Bayer v. Neiman Marcus Grp., Inc., 861 F.3d 853, 864 (9th Cir. 2017) (citation and internal quotation marks omitted). Here, Davis seeks injunctive relief in the form of an order requiring CDCR to provide him with a permanent lower bunk accommodation. See FAC ¶ 12. But the record makes clear that Davis already was issued a permanent lower bunk accommodation and that he has had it since November 2022. See also Pl.'s Opp'n (ECF No. 30) at 7 (conceding he "has a bottom-bunk accommodation"). Davis's claim for injunctive relief under Title II of the

United States District Court
Northern District of California

ADA is moot because there is no "present harm left to enjoin." Bayer, 861 F.3d at 864.

Davis argues that the voluntary cessation exception to mootness applies because CDCR could revise or remove the permanent lower bunk accommodation in the future. Not so. The voluntary cessation exception to mootness applies only if the defendant's voluntary cessation arose "because of the litigation." PUC v. FERC, 100 F.3d 1451, 1460 (9th Cir. 1996). It has no application in this case because CDCR did not issue the accommodation "because of" this litigation. Id. The record shows that Dr. Balbona issued the permanent lower bunk accommodation on November 22, 2022, approximately one year before Davis filed this action on November 27, 2023, based on her medical assessment that a non-formulary permanent bottom bunk accommodation was appropriate based on Davis's scoliosis and bone disease diagnoses. The voluntary cessation exception to mootness has no application in this case. See id.

That CDCR may revise or remove Davis's permanent lower bunk accommodation in the future does not compel a different conclusion. CDCR accommodations designated as permanent are reviewed annually. Balbona Decl. ¶ 3. Davis has had a permanent lower bunk accommodation based on his advanced scoliosis and bone disease diagnoses since November 2022. The permanent accommodation has survived multiple annual reviews and there is no indication or reasonable expectation that it will be revised or removed in the future without medical review and justification. Cf. Brach v. Newsom, 38 F.4th 6, 12 (9th Cir. 2022) (exception to mootness has no force if challenged behavior cannot reasonably be expected to recur). But if it is, Davis is free to file a new action seeking injunctive relief under Title II of the ADA.

2.    Monetary Relief

To recover monetary damages under Title II of the ADA, a plaintiff must prove that the defendant intentionally discriminated against the plaintiff. Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). The plaintiff must prove that the defendant was deliberately indifferent, which requires that the plaintiff show that the defendant (1) knew that harm to the plaintiff was substantially likely and (2) failed to act upon that likelihood. Id. at 1138–39. The first prong generally is satisfied when the plaintiff notifies the defendant of the plaintiff's need for an accommodation. Id. at 1139. The second prong requires the defendant to "undertake a fact-

specific investigation to determine what constitutes a reasonable accommodation." Id. A defendant cannot merely speculate that the suggested accommodation is not feasible. Id. The defendant must "gather sufficient information from the disabled individual and qualified experts to determine what accommodations are necessary." Id. (citation omitted). The defendant must "consider the particular individual's needs when conducting its investigation." Id. The second prong requires more than just negligence—the failure to act must be deliberate. Id.

Davis has set forth no probative evidence that CDCR was deliberately indifferent to his need for an accommodation. The evidence in the record instead makes clear that after receiving Davis's Reasonable Accommodation Request in early 2021, CDCR fulfilled its obligations to conduct a "fact-specific investigation" through the actions of the RAP, Dr. Balbona and the medical reviewers of Davis's related health care grievances. Id. When the RAP received Davis's request, it undertook a fact-specific inquiry that gathered relevant evidence from Davis's medical records, Dr. Balbona's physical examination of Davis, observations from custody staff in Davis's housing unit and interviews with Davis, to determine whether Davis's requested accommodation was appropriate. Based on this exhaustive investigation, which included Davis's housing officer's report of no observable issues with Davis's accessing his assigned upper bunk and Dr. Balbona's February 17, 2021 medical determination that Davis did not have any condition that qualified him for a permanent bottom bunk accommodation under CDCR's Comprehensive Accommodation Formulary Guidelines, the RAP reasonably denied Davis's request for a permanent lower bunk accommodation on February 18, 2021. Davis had multiple subsequent medical visits with Dr. Balbona in 2021 during which he requested a permanent bottom bunk accommodation. During each visit, Dr. Balbona physically examined Davis, identified normal strength, balance and range of motion, and again concluded that he did not have any condition that qualified him for permanent bottom bunk accommodation under CDCR's formulary guidelines. The medical reviewers of Davis's two 2021 health care grievances regarding the denial of his permanent bottom bunk accommodation request similarly reviewed the evidence in the record and denied the grievances based on the medical evaluations of Davis by Dr. Balbona and the relevant CDCR guidelines. But in late 2022, when Davis saw Dr. Balbona for ongoing complaints of back and

United States District Court
Northern District of California

knee pain, Dr. Balbona issued him a non-formulary permanent bottom bunk accommodation based on his scoliosis and bone disease diagnoses.

Based on this record, no reasonable juror could find that CDCR acted with deliberate indifference towards Davis's request for a permanent bottom bunk accommodation. See id. CDCR accordingly is entitled to summary judgment on Davis's claim for monetary damages under Title II of the ADA. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).[3]

**CONCLUSION**

For the foregoing reasons, CDCR's motion for summary judgment (ECF No. 26) is GRANTED.

**IT IS SO ORDERED**.

Dated: April 8, 2026

_____
CHARLES R. BREYER
United States District Judge

---

[3] Davis's claim that a permanent accommodation would have prevented him from falling while he was trying to reach the upper bunk in his cell on August 22, 2021, does not compel a different conclusion. Although regrettable, the claim amounts to no more than a possible claim for negligence which is not enough for monetary relief under Title II of the ADA. See Duvall, 260 F.3d at 1139. Davis has not had to sleep on a top bunk since.